[Cite as *Lindsey v. Lindsey*, 2019-Ohio-4923.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTINE LINDSEY, | : | **O P I N I O N** |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NOS. 2019-G-0201** |
| | : | **2019-G-0208** |
| - vs - | : | |
| DANIEL LINDSEY, | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Appeals from the Geauga County Court of Common Pleas, Case No. 2016 DC 000693.

Judgment: Affirmed.

*R. Russell Kubyn,* Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant/Cross-Appellee).

*Carol A. Szczepanik,* The Law Office of Carol A. Szczepanik, LLC, P.O. Box 214, 10808 Kinsman Road, Newbury, OH 44065 (For Defendant-Appellee/Cross-Appellant).

*Denise Cook,* 154 East Aurora Road, PMB #231, Northfield, OH 44067 (Guardian ad litem).

MARY JANE TRAPP, J.

{¶1} Appellant/cross-appellee, Christine Lindsey ("wife"), appeals the judgment of the Geauga County Court of Common Pleas adopting the magistrate's decision recommending equal, shared parenting of the parties' child, C.L. Appellee/cross-

appellant, Daniel Lindsey ("husband"), appeals from the same judgment awarding wife $812.17 per month child support. For the reasons discussed in this opinion, we affirm.

**Facts and Procedural History**

{¶2} The parties were married on September 3, 2011. They had one child during the marriage, C.L., born June 3, 2015. On August 24, 2016, wife moved from the marital residence with C.L. and, on September 6, 2016, she filed a complaint for divorce. Husband subsequently filed an answer and counterclaim. Each party pleaded incompatibility as grounds for divorce. The parties filed motions for shared parenting. Commencing November 4, 2016, husband was afforded visitation with C.L. every Wednesday from 4:30 p.m. to 7:00 p.m. and Saturday 9:00 am to 6:00 p.m. On March 23, 2017, an interim agreed magistrate order was filed establishing temporary parenting time and support. The agreed entry expanded husband's visitation to alternating weekend visitation from Saturday at 6:00 a.m. through Sunday at 6:00 p.m. This order also established accounts with Our Family Wizard ("OFW"), a digital means for the parties to communicate with one another. The order required the parties to enter all medical, education, and extracurricular activities on the OFW calendar. The court additionally ordered each party to respond to the other's communications within 24 hours.

{¶3} The matter came before the magistrate for final hearing on May 25, 2018 and July 13, 2018. At trial, wife testified the parties lived together for five years before marriage. She emphasized they had experienced difficulty communicating throughout their relationship and she did not anticipate better communication in the future. Wife asserted husband has a history of drinking to excess and, after C.L. was born, he went

2

out frequently and was barely involved with the child. She stated she moved out of the marital home in August 2016 without alerting husband beforehand. According to wife, husband did not contact her for nearly two weeks. After the underlying proceedings were filed and the March 2017 order was entered, wife enrolled C.L. in gymnastics and swimming, but failed to provide husband with a schedule. Wife also hired a private investigator to follow husband because she allegedly feared for C.L.'s safety. She testified husband never advised her of his and C.L.'s plans and, as a result, she determined she had "to figure out what he was doing." In an effort to fulfill its obligations, the private investigation company placed a tracking device on husband's truck. Wife, however, discharged the private investigation service after no evidence was found to support any concern that C.L. was in danger. Throughout her testimony, wife was very critical of husband and his ability to properly parent C.L.

{¶4} Husband echoed wife's testimony regarding the time they lived together and also acknowledged the couple always had difficulty communicating. He stated, however, that wife would not allow him to participate in C.L.'s care after the child was born. He asserted he desired to help with the baby, but wife insisted on taking near total control of the infant's care. Husband denied having any issues with alcohol and maintained that, while he did drink, this was not a subject the couple argued about often. After the parties separated, husband acknowledged communication was even more difficult and wife did little to cooperate with him. Husband underscored his desire to work with wife raising C.L. in a healthy, collaborative fashion and maintained that even though they were divorcing, their family unit, as parents, was still intact. Husband testified he believed wife was a good mother and did not speak ill of her when he has

3

C.L. Early in the proceeding, husband submitted a formal shared-parenting plan, which provided for equal parenting time on an alternating weekly schedule. At the hearing, however, he stated he did not wish the court to adopt that plan. While husband still desired equal shared-parenting, he testified he approved of the 50/50 model recommended by the guardian ad litem ("GAL"). In light of this request, husband recognized that wife had profound anger towards him, but he believed, with time, the parties could work out their problems and learn to communicate more effectively for C.L.'s benefit.

{¶5} Several of husband's friends testified on his behalf. Each stated they have observed, with some regularity, husband with C.L. They unanimously testified that husband and the child have a happy and connected relationship; moreover, they testified husband is a responsible parent who effectively engages C.L. and properly prepares the child when they go on day trips.

{¶6} Denise Cook, the GAL, testified she had been working on the case for approximately 20 months. She testified the parties' communication is not ideal, but not abnormal given the circumstances of their relationship. She stated the parties parenting skills, from her observations, are "parenting in a better way than most people are." Ms. Cook testified that, in her view, the parties are both intelligent and articulate people and have the ability to communicate effectively. In fact, she maintained the parties' communication has improved since the beginning of the case. She testified C.L. displays no anxiety with either parent and is happy with both parents in their respective homes. Ms. Cook found no evidence to corroborate wife's claim that husband has an alcohol abuse problem. In light of the foregoing, and the parties' intention to maintain

4

residences in the same area, Ms. Cook recommended a shared-parenting plan. She stated the plan was not premised upon previous plans submitted by the parties to the court, but upon C.L.'s best interest. Ms. Cook testified the plan she advanced proposed equal parenting time for both wife and husband due to C.L.'s attachment to each party; in particular, she testified wife should have parenting time from Monday morning through Wednesday morning and husband should have time from Wednesday morning through Friday morning, with the parties alternating weekends. Holidays and special dates were also alternating or specifically allocated. Ms. Cook testified the parenting plan in place at the time of the hearing was not in C.L.'s best interest. And, given the child's close relationship to both parents, and in consideration of the other statutory factors, she maintained the plan she recommended would be in C.L.'s best interest.

{¶7} On October 29, 2018, the magistrate issued her decision. After considering the relevant statutory best-interest and shared-parenting factors, the magistrate determined the GAL's shared-parenting recommendation was in C.L.'s best interest. The magistrate observed that she was concerned that "without shared parenting, [wife] will marginalize [husband's] role as [C.L.'s] father. The magistrate further concluded, after considering the parties' relative economic positions, that husband should pay wife $812.17 per month in child support. Although the magistrate drew additional conclusions necessary to a full resolution of the case, those matters are not relevant to the instant appeal.

{¶8} Both parties filed objections to the magistrate's decision. Wife objected to, inter alia, the magistrate's adoption of the GAL's recommended shared-parenting plan.

5

And husband objected to the magistrate's recommendation relating to his child-support obligation.

{¶9} On February 22, 2019, the trial court issued an order overruling wife's objections, with the exception of an apparent typographical error indicating wife, rather than husband should pay child support. On March 8, 2019, the trial court issued an additional order overruling wife's and husband's objections with the exception of the previously mentioned typographical error and an error which overlooked the stipulated date of marriage. On March 11, 2019, the trial court issued a judgment adopting the magistrate's decision, save the previously noted modifications. In the judgment, however, the court ordered "that the parties shall submit a Shared Parenting Plan, for the parenting of the parties' minor child, [C.L.], born June 3, 2015, prepared in accordance with the Magistrate's Decision, within 14 days of the journalization of this Judgment."

{¶10} On April 1, 2019, husband filed his shared parenting plan, which reflected the GAL's recommendation as adopted by the trial court. On April 3, 2019, wife submitted her shared parenting plan, which was not consistent with the GAL's recommendation. Instead, wife filed a shared parenting plan that husband had previously submitted. In that plan, the parties would share C.L. in week long increments. Meanwhile, on April 5, 2019, wife filed her notice of appeal from the March 11 judgment and husband filed his notice of appeal on April 15, 2019. On the same date, the magistrate filed her decision adopting husband's shared parenting plan. Although the issue of shared parenting was formally resolved by the trial court's March 11 judgment, wife filed objections to the magistrate's April 15 decision and requested a

6

hearing. Husband filed a memorandum in opposition. On May 15, 2019, the trial court entered judgment, adopted the magistrate's April 15 decision. Wife subsequently filed a notice of appeal of this judgment. We consolidated wife's first appeal and husband's cross-appeal with wife's second appeal.

{¶11} Before embarking on an analysis of the issues raised on appeal and cross appeal, we must attempt to make some sense of the strange procedural wrangling which took place after the March 11, 2019 judgment. The parties appeared to view the court's March 11 judgment as a final, appealable order. Because, however, the trial court ordered the parties to submit a shared parenting plan in accordance with the GAL's recommendation, that issue was not fully and finally resolved. Thus, the notices of appeal filed from that judgment were premature.

{¶12} On April 15, 2019, the magistrate adopted husband's plan as it was consistent with the trial court's order. That order formally resolved the substantive nature of shared parenting. As such, any objections to the magistrate's decision were essentially a nullity as that matter had been formerly adjudicated – all that remained pending from that former adjudication was the submission of an actual written plan consistent with the court's order. The matter became final upon the trial court's May 15, 2019 adoption of the magistrate's April 15 decision. It is from this decision that the underlying issues on appeal properly emanate. With this in mind, we shall proceed to address wife's two assignments of error. Her first assignment of error provides:

{¶13} "The trial court erred and committed an abuse of discretion, including adopting the magistrate's decision, in ordering 50/50 division shared parenting adopting the unsupported proposal by the guardian ad litem in the GAL's report and

7

recommendations, even though neither party filed a proposed shared parenting plan incorporating a 50/50 division of parenting time."

{¶14} Under this assignment of error, wife first argues neither party submitted a proposed shared-parenting plan incorporating a 50/50 division of parenting time and, as a result, the trial court was without authority to order such an arrangement. We do not agree.

## Authority to Order Shared Parenting

{¶15} R.C. 3109.04(G) requires a party or parties to file a pleading or motion seeking shared parenting to make shared parenting an issue for the trial court. *See Rymers v. Rymers*, 11th Dist. Lake No. 2009-L-160, 2010-Ohio-6439, ¶24. In this case, at the early stages of the proceedings, both parties filed motions for shared parenting along with a proposed plan. Wife later withdrew her plan. And while husband stated he no longer wished to proceed with his original proposal (a one-week-on, one-week-off schedule), he repeatedly testified he still wished equal time with C.L. To this end, during his testimony, husband stated he agreed with the GAL's allocation of shared parenting recommended in her plan.

{¶16} R.C. 3109.04(D)(1)(a) provides, in relevant part:

{¶17} Upon the filing of a pleading or motion by either parent or both parents, in accordance with division (G) of this section, requesting shared parenting and the filing of a shared parenting plan in accordance with that division, the court shall comply with division (D)(1)(a)(i), (ii), or (iii) of this section, whichever is applicable:

{¶18} * * *

{¶19} (ii) If each parent makes a request in the parent's pleadings or files a motion and each also files a separate plan, the court shall review each plan filed to determine if either is in the best interest of the children. If the court determines that one of the filed plans is in the

8

best interest of the children, the court may approve the plan. If the court determines that neither filed plan is in the best interest of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections, or may select one of the filed plans and order each parent to submit appropriate changes to the selected plan to meet the courts objections. If changes to the plan or plans are submitted to meet the court's objections, and if any of the filed plans with the changes is in the best interest of the children, the court may approve the plan with the changes.

{¶20} Here, the magistrate and the trial court determined the GAL's shared-parenting-plan recommendation deemed to be in C.L.'s best interest. The magistrate and trial court also concluded husband's shared parenting plan should be amended to incorporate the GAL's recommendation. Husband moved for shared-parenting early in the case; he testified he no longer supported the arrangement he originally proposed, but, instead, agreed with the GAL's arrangement. In finding the GAL's shared-parenting plan in C.L.'s best interest, the trial court, pursuant to R.C. 3109.04(D)(1)(a)(ii), essentially objected to husband's original plan and ordered the parties to submit appropriate changes in accordance with the GAL's recommendation. We discern nothing problematic with the magistrate's or the trial court's procedure.

### C.L.'s Best Interest and the Weight of the Evidence

{¶21} Wife next contends the trial court erred in adopting the magistrate's decision because the GAL's recommendation was flawed and unsupported by the evidence. Wife additionally argues that the shared-parenting plan recommended by the magistrate is not in C.L's best interest due to the surrounding circumstances of the parties' relationship and the issues identified by wife at trial.

{¶22} The General Assembly has provided that a domestic relations court shall exercise its jurisdiction in child-custody matters in accordance with R.C. 3109.04. *In re*

9

*Poling*, 64 Ohio St.3d 211, 216 (1992). Custody determinations, including those involving shared parenting, are entrusted to the sound discretion of the trial court. *Liston v. Liston,* 11th Dist. Lake No. 2011-P-0068, 2012-Ohio-3031, ¶15. In rendering its decision, the trial court is in the best position to observe the witnesses, "which cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). Moreover, given these points, we are "'guided by the presumption that the trial court's findings were indeed correct.'" *Id.; see also Foxhall v. Lauderdale,* 11th Dist. Portage No. 2011-P-0006, 2011-Ohio-6213, ¶26, quoting *Bates-Brown v. Brown,* 11th Dist. Trumbull No. 2006-T-0089, 2007-Ohio-5203, ¶18 ("decisions involving the custody of children are 'accorded great deference on review'").

{¶23} The phrase "abuse of discretion" is defined as the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8 Ed.Rev.2001). "[W]here the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Beechler, supra*, at ¶67. That is, "in determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, 'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Foxhall, supra,* at ¶28, quoting *Clyborn v. Clyborn,* 93 Ohio App.3d 192, 196 (3d Dist.1994).

{¶24} R.C. 3109.04 governs provisions for shared parenting and the allocation of parental rights. Pursuant to R.C. 3109.04(D)(1)(b), a trial court may not approve a shared parenting plan unless it first determines that the plan is in the best interests of

the child. *Liston v. Liston, supra*, at ¶17. Specifically, R.C. 3109.04(F)(1) and (F)(2) enumerate certain factors a court must consider in determining whether shared parenting is in the best interests of the child. This list is nonexclusive as the trial court is not limited to the statutory factors. *Id.* at ¶ 17. Though there should be some indication in the judgment entry that the trial court consider the best interests of the child pursuant to R.C. 3109.04(F), there is no requirement it make specific findings in its entry as to each and every factor. *Id.; see also In re S. S.,* 11th Dist. Geauga No. 2010-G-2997, 2012-Ohio-120, ¶23.

{¶25} The factors found in R.C. 3109.04(F)(1) include: (a) the wishes of the child's parents regarding the child's care; (b) the wishes or concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with her parents and any other person who may significantly affect the child's best interest; (d) the child's adjustment to her home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶26} The factors set forth R.C. 3109.04(F)(2) include: (a) the ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) the

11

ability of each parent to encourage the sharing of love, affection, and contact between the child and other parent; (c) the history of, or potential for, domestic abuse; (d) the geographic proximity of the parents to one another; and (e) the recommendation of the guardian ad litem.

{¶27} In arguing the shared parenting plan adopted by the trial court is not in C.L.'s best interest, wife takes issue with various aspects of the magistrate's findings. First, wife asserts the magistrate erred in concluding a 50/50 split is in C.L.'s best interest because, in doing so, she discounted wife's concerns with husband's alleged "drinking, narcissism, 'fits of rage,' and other violent and abusive tendencies." Reviewing the testimony, we do not agree that the magistrate ignored or overlooked wife's concerns. Rather, the GAL testified she observed no evidence of alcohol abuse or any erratic or unseemly behavior on behalf of husband. Further, while husband acknowledged the parties' relationship was somewhat tumultuous and fraught with communication breakdowns, he categorically denied wife's allegations. The magistrate, in her decision, expressly found husband's testimony credible. The magistrate was in the best position to adjudicate credibility and we discern no error in her evaluation of witness' testimony.

{¶28} Next, wife asserts the magistrate abused its discretion when she found wife limited appellee's parenting time with C.L. Husband testified wife moved out twice. The first time, in April of 2016, she left with C.L. while husband was attending a baseball game. He testified she ultimately moved back into the marital home but he was unable to see C.L. for a week during this period. After wife moved out the second time, husband testified: "I tried to work with her because when we met [subsequent to wife

12

leaving], we talked about sharing responsibilities with [C.L.]. So I would text her multiple times, saying I want to pick her up this weekend, Saturday. Christine would limit me to a few hours where I would have to drive, pick her up, drive her back to Chesterland, and back again. So I essentially have, I think it was three hours, maybe two hours with [C.L.]." The foregoing testimony supports the magistrate's finding.

{¶29} Wife next asserts the magistrate erred in finding wife moved out of the marital residence without telling husband. As just discussed, wife moved out twice. The first time, wife communicated she was leaving via text message while in the process of moving out; the second time, husband was at work and he received a text requesting him to meet wife for coffee after work. When they met, wife stated she had moved out. One can draw the reasonable inference from the foregoing facts that husband was not on notice that wife was moving prior to her leaving. Although wife did notify husband, her efforts occurred after she had made her decision and actually left the residence. The magistrate's finding is not error.

{¶30} Wife further takes issue with the magistrate's finding that wife had nothing good to say about husband during her testimony. Wife alleged husband drinks to excess, is abusive, and was, in effect, an absentee spouse and father. These allegations were not tempered by any positive or redeeming qualities. The magistrate's finding was supported by wife's testimony.

{¶31} Next, wife asserts the magistrate incorrectly found that husband's non-involvement in C.L.'s care was the result of wife's actions. Husband's testified that although he wished to assist in C.L.'s care as much as possible, he was regularly

13

rebuffed. The magistrate found his testimony credible and we see no basis to upset this conclusion.

{¶32} Wife also contends the magistrate erred in finding she failed to notify husband about a minor eye injury sustained by C.L. Wife did alert husband that the child injured herself when the parties met to exchange C.L. The injury, however, occurred hours earlier and wife testified she took the child to the doctor for the injury. The magistrate's finding that wife did not notify husband is somewhat misleading. Still, wife did not immediately notify husband of the injury. And, given that wife thought the injury was sufficiently serious to merit a doctor's visit, the magistrate could reasonably infer that immediate notification would have been proper. In this respect, the finding is not erroneous.

{¶33} Wife argues that magistrate erred in finding there was no evidence of abuse or violence. She points to the testimony of husband's character witness, Jessica Verbick, who testified wife disclosed to her that husband called her names and placed his hands on her. Ms. Verbick provided wife with the phone number of a shelter, but wife did not pursue the matter further. While this testimony is relevant to wife's allegations, it still did not substantiate the allegation. Moreover, husband denied the allegations. While there was evidence that husband may have been verbally abusive, the magistrate was free to believe husband's testimony that his comportment towards wife was, for the most part, civil. We see no error in the magistrate's conclusion.

{¶34} Wife also cites various cases in which courts have held that shared parenting is improper where parents cannot cooperate and make joint decisions. We acknowledge the appropriateness of the foregoing rule under circumstances where the

14

evidence demonstrates a mutual lack of cooperation that has no foreseeable likelihood of changing. In this case, the evidence demonstrated that the parties' communication has progressively improved; husband explicitly desires wife's active participation in their mutual rearing of C.L.; and the GAL repeatedly emphasized her belief that, given the parties' mutual commitment to C.L.'s best interest, she believed they will continue to improve their ability to communicate effectively. Because there was evidence that the communication nexus has gradually and will continue to improve, it is reasonable to infer that the parties will, with time, be able to cooperate well and engage in productive joint decision-making.

{¶35} In reaching her recommendation, the magistrate engaged in a full and complete analysis of the relevant R.C. 3109.04(F)(1) best interest factors. Specifically, she noted wife's interest in being designated the residential parent and legal custodian of C.L. as well as husband's desire for shared parenting with equal division of time. She found that C.L. is "very bonded" with both parents and that C.L. is happy in each party's home. The magistrate found that neither party has any major medical or psychological issues, but wife has not been supportive of husband's relationship with C.L. Moreover, with respect to her finding that shared parenting was in the best interest of C.L., the magistrate considered the R.C. 3109.04(F)(2) factors. In particular, she found that the parties have difficulty communicating, but have the capacity to communicate effectively. Moreover, she noted that husband is making every effort to support C.L.'s relationship with wife; and, even though wife has not been particularly supportive of husband's relationship with the child, she has that ability, provided she lets go of her anger and anxiety. The magistrate found no evidence of physical abuse or violence. She further

15

found the parties live in relatively close proximity to each other. Finally, the magistrate highlighted the GAL's recommendation of shared parenting.

{¶36} In light of the foregoing, we conclude the magistrate did not err in finding shared parenting to be in C.L.'s best interest. We consequently hold the trial court did not abuse its discretion in adopting the magistrate's decision on this issue.

{¶37} Wife's first assignment of error lacks merit.

**Propriety of Adopting Revised Shared Parenting Plan**

{¶38} For her second assignment of error, wife asserts:

{¶39} "The trial court erred and committed an abuse of discretion, including adopting the magistrate's decision, dated April 15, 2019, in issuing a shared parenting decree which failed to properly set forth the prior magistrate's decision and judgment ordering a specific albeit disputed shared parenting plan recommended by the guardian ad litem."

{¶40} The GAL recommended midweek/weekend parenting time to proceed as follows: wife has parenting time each Monday beginning when C.L. is returned to school, child care, or mother's residence no later than 9 a.m. and ending on Wednesday when C.L. is returned to school, child care, or father's residence no later than 9 a.m. Husband receives the same arrangement from Wednesday and ending Friday. The GAL further recommended each parent will receive alternating weekends. The GAL also set forth parenting time for days of special meaning, holidays, winter break, spring break, and summer vacation.

{¶41} A comparison of the plan submitted by husband and the plan recommended by the GAL reveals they are substantively the same. The only real

16

apparent difference between the two plans is the plan submitted by husband includes Halloween and Valentine's Day as holidays the parties will alternate; the GAL's plan did not include these holidays. We conclude, however, this inclusion is a de minimis deviation and find no error in adopting the revised plan submitted by husband.

{¶42} Wife's second assignment of error lacks merit.

## Propriety of Amount of Spousal Support

{¶43} Husband assigns one error on cross-appeal. It provides:

{¶44} "The trial court erred in ordering that the defendant appellee-cross appellant pay child support to the plaintiff appellant-cross appellee in the amount of $812.17 per month commencing with the journalization of the judgment entry."

{¶45} Under his assignment of error on cross-appeal, husband asserts the trial court's award of $812.17 per month in child support is overly burdensome. He contends the amount should be downwardly deviated primarily due to the extended parenting time he was awarded and related expenses. *See* R.C. 3119.23(C) (a factor that may be considered in downwardly deviating a child-support order is "[e]xtended parenting time or extraordinary costs associated with parenting time * * *.")

{¶46} Former R.C. 3119.04(B) governed the trial court's child support computation.[1] That statute provides:

{¶47} If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligors child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the

---

1. The amended, current version of R.C. 3119.04 became effective March 28, 2019.

obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶48} Accordingly, "when the combined gross income of the parents exceeds $150,000, the statute requires a court to treat the issue of child support on a case-by-case basis[.]" *Longo v. Longo*, 11th Dist. Geauga Nos. 2008-G-2874 and 2009-G-2901, 2010-Ohio-3045, ¶11. In so doing, however, the court must consider the needs and standard living of the children and the parents in arriving at its conclusion. *Id.*

{¶49} The language of the statute demonstrates a domestic court possesses considerable discretion in setting a child support order when the parents combined income is above $150,000. *Longo*, *supra*, at ¶12, citing *Macfarlane v. Macfarlane,* 8th Dist. Cuyahoga No. 93012, 2009-Ohio-6647, at ¶17. Indeed, "the statute leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support listed for combined incomes of $150,000." (Emphasis removed.) *Cyr v. Cyr,* 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, at ¶54. This court, therefore, will not reverse the trial court's judgment under these circumstances absent an abuse of discretion.

{¶50} The child support computation worksheet identified husband's annual income as $97,656.78 and wife's annual income as $71,921.76. Husband points out that, when added together, husband earned 57.59% of the parties' total income and wife earned 42.41% of the income. Using these figures as a base, under the support order, husband's income will shift to $87,910.74 and wife's will be $81,667.80. While

18

these figures are significantly closer to one another, husband will still have approximately $500 more per month than wife. This does not militate heavily in favor of deviation.

{¶51} Moreover, husband recognizes that he did not submit any prospective expenses he would be paying relating to the additional extended parenting time. The trial court, accordingly, did not have any figures to consider when the calculation was made. And, other than unspecified, albeit real, additional child-care expenses husband will have, he does not detail any other "related expenses" or articulate how his standard of living will be encumbered by the current order. The trial court's order provides, inter alia, "[t]he duty of support shall continue until further order of the Court * * *." This indicates the trial court reserved jurisdiction to modify the order if necessary. In this respect, if husband can elucidate, at a future time, that his ability to pay child-care-related expenses is compromised by the order or his standard of living has been appreciably changed, he could move the court for a deviation. Given the facts and the evidence before the trial court at the time of the order, however, we decline to hold the trial court abused its discretion in ordering child support in the amount of $812.17.

{¶52} Husband's assignment of error on cross-appeal is without merit.

{¶53} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P. J.,

TIMOTHY P. CANNON, J.,

concur.

19