[Cite as *Lindsey v. Lindsey*, 2021-Ohio-2060.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| CHRISTINE LINDSEY, | CASE NO. 2020-G-0275 |
| Plaintiff-Appellant, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas |
| DANIEL LINDSEY, | |
| Defendant-Appellee. | Trial Court No. 2016 DC 000693 |

## **O P I N I O N**

Decided: June 21, 2021
Judgment: Affirmed

*R. Russell Kubyn*, Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant).

*Carol A. Szczepanik*, The Law Office of Carol A. Szczepanik, LLC, P.O. Box 214, 10808 Kinsman Road, Newbury, OH 44065 (For Defendant-Appellee).

*Denise Cook*, 154 East Aurora Road, PMB #231, Northfield, OH 44067 (Guardian ad Litem).


MARY JANE TRAPP, P.J.

{¶1}   Appellant, Christine Lindsey ("mother"), appeals from the judgment of the Geauga County Court of Common Pleas holding her in contempt of court upon the emergency motion of appellee, Daniel Lindsey ("father").  At issue is whether the trial court erred in finding her in contempt; if not, whether the conditions for purging the

contempt were unreasonable or impossible to meet; and, whether ordering her to pay father's attorney fees and costs was an abuse of discretion.

{¶2}   We affirm the trial court's judgment. Mother's unilateral action in withholding parenting time using COIVD-19 pandemic restrictions as a basis without seeking court intervention until months after father filed to gain parenting time is contemptuous. While the onset of the COVID-19 pandemic caused much consternation about contact between those living in different households, the directives issued by the state of Ohio anticipated the need for travel and contact between different households in order to facilitate parenting time.

{¶3}   Mother was given the opportunity to purge the jail time and have the fine suspended by obeying the court's previous orders. Given the conditional nature of these sanctions, the trial court properly found that father met his burden of proving mother was in civil, not criminal, contempt, and mother failed in her burden to establish impossibility of compliance or a reasonable excuse for non-compliance with the parenting time order. We also find these conditions are neither impossible to comply with nor impractical or unreasonable.

{¶4}   Finally, the trial court did not abuse its discretion in awarding reasonable attorney fees and costs that would not have been incurred but for mother's unilateral conduct.

**Substantive Facts and Procedural History**

{¶5}   The parties were married in 2011 and divorced in 2019. They had one child as issue of their marriage, C.L. Ultimately, the trial court adopted a 50/50 shared-parenting plan, which was submitted by father. Mother appealed that order, inter alia,

2

and in *Lindsey v. Lindsey*, 11th Dist. Geauga No. 2019-G-0201, 2019-Ohio-4923, this court affirmed the trial court's judgment. Mother subsequently filed an appeal to the Supreme Court of Ohio, but the high court declined to accept the matter for review. *See Lindsey v. Lindsey*, 158 Ohio St.3d 1505, 2020-Ohio-2819.

{¶6} Meanwhile, during the pendency of the appeals, father did not seek to specifically enforce the 50/50 shared-parenting order. He maintained that he did not wish to disrupt C.L.'s routine in the event the parenting plan were to change by virtue of mother's appeals. As such, he continued to exercise the more limited parenting time afforded in prior court orders; namely, one overnight during the week and alternating weekends from Friday to Sunday. The parties adhered to this schedule, without issue, until March 2020, at the onset of the COVID-19 pandemic. At that time, mother unilaterally determined father could not physically visit C.L. due to concerns relating to the virus and its potential transmission. As a result, on March 19, 2020, father filed an emergency motion to show cause and motion for attorney fees and litigation expenses. Mother opposed the motion, and father duly replied to the opposition. The matter was set for hearing on April 15, 2020.

{¶7} At the outset of the hearing, counsel for mother made an oral objection to the magistrate hearing the case, alleging a conflict that required her to recuse herself. Ultimately, after various pleadings were filed on the conflict issue, the motion to remove the magistrate was denied. Mother appealed this judgment but, on June 30, 2020, this court dismissed the matter for lack of a final, appealable order. *See Lindsey v. Lindsey*, 11th Dist. Geauga No. 2020-G-0250, 2020-Ohio-3567. Finally, a hearing on the show-cause motion was held on July 31, 2020. After receiving testimony from father, mother,

3

and mother's mother, as well as father's attorney (regarding the fee issue), the magistrate concluded mother refused to comply with the court's parenting-time order. The magistrate therefore recommended mother be held in contempt. The magistrate further decided mother should serve 10 days in jail and be fined $250. The magistrate also recommended father receive 13 consecutive days' visitation for the actual time father lost due to mother's actions. The magistrate recommended the jail time and fine be suspended pending mother's compliance with court orders. The magistrate additionally concluded father should be awarded $1,275 in attorney fees and that mother pay costs.

{¶8} Mother filed objections and supplemental objections to the magistrate's decision. Father opposed the objections, and, on November 25, 2020, the trial court adopted the magistrate's recommendations. Mother appeals that judgment and assigns two errors for our review. The first alleges:

{¶9} "The trial court erred and committed an abuse of discretion, including adopting the magistrate's decision, finding the appellant in contempt of court, whether by clear and convincing evidence that the appellant failed to comply with parenting time orders therein in civil contempt and/or beyond a reasonable doubt in criminal contempt, due to the nature of the allegation by the appellee and the finding and penalties and fine imposed by the trial court."

### Purported Inconsistency in Trial Court's Judgment

{¶10} Mother first contends the trial court erred in finding mother should have moved the court to challenge the previous order rather than resorting to a unilateral remedy of halting father's visitation. She asserts she indeed filed an emergency motion to maintain status quo and a motion to terminate shared parenting. Accordingly, she

4

argues the court overlooked and/or ignored these filings and, in light of its adoption of the magistrate's decision in the underlying matter, improperly denied the motions without a meaningful hearing.

{¶11} We acknowledge mother filed the above-stated motions. They were filed, however, on August 3 and August 4, 2020, respectively, months after father filed his emergency motion to show cause. The hearing on the motion for contempt occurred on July 31, 2020. The motions, therefore, were filed well after the alleged contemptable conduct. As a result, the trial court did not make a problematic finding inasmuch as the trial court's statement is valid; it related to the conduct for which the show cause motion was filed. If mother had a problem with the visitation order vis-à-vis the COVID-19 pandemic in March 2020, she should have filed the motions at that point rather than preventing father from exercising his rights without judicial intervention.

### Civil versus Criminal Contempt

{¶12} Contempt of court has been variously defined as "disobedience of an order of a court" and "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988). Contempt powers are considered inherent in the court and considered necessary to the proper exercise of judicial functions. *Id*. Because the primary purpose of a contempt proceeding is to preserve the authority and proper functioning of the court, we review the trial court's decisions in contempt proceedings for an abuse of discretion. *Id.* at 16.

{¶13} "Proceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but

5

Case No. 2020-G-0275

they are none of these." *Cincinnati v. Cincinnati Dist. Council 51*, *Am. Fedn. of State, Cty. and Mun. Emps., AFL-CIO*, 35 Ohio St.2d 197, 201-202 (1973). Although the distinction between civil and criminal contempt is sometimes less than clear, it is important. *See Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, ¶ 11, citing *Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose served by imposing the sanction. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001).

{¶14} If the sanction is remedial or coercive and for the benefit of the complainant, the contempt proceeding is usually classified as civil. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). Often, civil contempt is characterized by conditional sanctions, i.e., "[t]he contemnor is said to carry the keys of his prison in his own pocket" and may be jailed until he or she complies with the court order. *Id.* On the other hand, criminal contempt is usually characterized by unconditional prison terms or fines. *Id.* at 253-254. The purposes behind the sanction in criminal contempt are primarily to punish the contemnor and to vindicate the authority of the court. *Id.* Thus, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind the sanction: was it to coerce mother to obey the court's judgment, or was it to punish her for past violations?

{¶15} Mother contends the trial court's order finding her in contempt was criminal in nature and, as a result, the court was required to make a determination that father established proof of contempt beyond a reasonable doubt. Mother further contends father

6

failed to meet this heightened burden. Thus, she concludes the trial court erred when it found her in contempt. We do not agree.

{¶16} Initially, the sanctions imposed by the court included a fine of $250; 10 days in jail; and the payment of attorney fees as well as court costs. Mother was given the opportunity to purge the jail time and have the fine suspended by obeying the court's previous orders. Given their conditional nature, the purpose of these sanctions is civil in nature, and, accordingly, we conclude mother was found in civil contempt.

**Did Father Establish Mother was in Civil Contempt of the Visitation Order?**

{¶17} The shared parenting decree at issue provides, in relevant part:

{¶18} "Father and Mother shall comply with the following Plan for Shared Parenting regarding the custody, care and control of the minor child pursuant to Ohio Revised Code Section 3109.04.

{¶19} "* * *

{¶20} "Both Father and Mother shall be the legal custodians and residential parents of the minor child when he or she has parenting time.

{¶21} "* * *

{¶22} "The Mother shall have parenting time each Monday beginning when the minor child is returned to school, child care, or the Mother's residence, as appropriate, but in no event later than 9:00 a.m. and ending on Wednesday when the minor child is returned to school, child care, or Father's residence, as appropriate, but in no event later than 9:00 a.m.

{¶23} "The Father shall have parenting time each Wednesday beginning when the minor child is returned to school, child care, day care, or Father's residence, as

7

appropriate, but in no event later than 9:00 a.m. and ending on Friday when the minor child is returned to school, child care, or the other parent's residence, as appropriate, but in no event later than 9:00 a.m.

{¶24} "The Mother and Father shall have parenting time with the minor child on alternating weekends beginning Friday when the minor child is returned to school, child care, or the other parent's residence, as appropriate, but in no event later than 9:00 a.m. and ending the following Monday when the minor child is returned to school, child care, or Mother's residence, as appropriate, but in no event later than 9:00 a.m.

{¶25} "This allocation of parenting time is flexible and may be modified by mutual agreement of the Father and Mother as warranted."

{¶26} We initially point out that, although evidence indicated mother provided father with "face-time" visitation, the decree contemplates *residential* parenting; thus, face-time cannot be considered parenting time. Further, despite the built-in flexibility of the decree, father did not agree to the modification mother imposed. As such, the evidence established mother violated the specific terms of the decree.

{¶27} Notwithstanding these pivotal points, mother argues father failed to meet his burden of proof by establishing she, by clear and convincing evidence, committed civil contempt. She initially claims that, regardless of her prima facie violation of the prior visitation order, compliance with the order was impossible, owing to the COVID-19 pandemic. She asserts that, in light of the pandemic, compliance with the order was unreasonable and thus she established, by a preponderance of the evidence, the affirmative defense of impossibility. We do not agree.

8

{¶28} As discussed above, mother could have sought a modification of the visitation order by moving the court and arguing the pandemic justified a modification of the visitation arrangements. She did not do so. We recognize that courts of law implemented social distancing rules and policies restricting in-person interaction due to the pandemic. Still, they remained open, and thus mother was not precluded from seeking relief; hence, because it was neither impossible nor impracticable for her to move the court in March to modify visitation, she failed to demonstrate her lack of compliance was a function of impossibility.

{¶29} Next, mother contends compliance with the visitation order would have been unreasonable due to her legitimate concerns relating to the pandemic. She additionally asserts that even if she technically violated the order, she did so based upon a good-faith belief that her violation would protect the safety of C.L. Consequently, she maintains, the trial court should have concluded any violation was excusable. We do not agree.

{¶30} The Ohio Department of Health's March 22, 2020 stay-at-home order included various exceptions for essential activities and travel. One exception to the stay-at-home order was traveling for transport of children pursuant to a custody order. If travel for such a purpose is essential, it would reasonably follow that visitation and custody transfers are equally essential. A copy of the Department's order was submitted into evidence and admitted over objection. Thus, even though mother asserted her decision to withhold father's physical visitation rights was due to a legitimate concern for C.L.'s safety, pursuant to the state's stay-at-home directives, her ultra vires actions were

9

actually inconsistent with the Department's order. Mother's claim that compliance was unreasonable is therefore without merit.

{¶31} Furthermore, the evidence showed that mother and C.L. lived with her parents and adult brother. In addition, mother's young nephew was in the house regularly because her mother babysat the child. Even though mother testified each resident of the household took strict precautions regarding outside contact with others, it is not entirely clear whether the same could be said of the nephew or the members of his household. Alternatively, father lived alone, worked remotely, and for the most part, had little outside contact with third parties. In light of these points, we cannot conclude mother's unilateral decision to withhold visitation was the only reasonable means of protecting C.L. Indeed, even though testimony reflected mother's household took certain precautions to protect the members from significant exposure to strangers, it would not appear adhering to the visitation schedule, given father's lifestyle, would have placed C.L. in the path of imminent harm. Regardless of mother's belief that her actions were necessary, the court did not err in concluding her violation of the visitation order was inexcusable.

{¶32} The evidence demonstrated mother was aware of the court-ordered visitation schedule. Mother, in a text message to father, stated that, irrespective of the order, she would be "drawing a hard line and visitation will not happen until things settle down." She additionally stated: "[u]nless the courts force me to remove her from being contained. I will continue to keep her quarantined." As noted above, the court found mother in civil contempt, which required father to establish the violation by clear and convincing evidence. This quantum of proof is more than a mere preponderance of the

10

evidence but is not that required beyond a reasonable doubt. We hold father met his burden and therefore the trial court did not err in finding mother in civil contempt.

{¶33} Mother's first assignment of error is without merit.

{¶34} Mother's second assignment of error provides:

{¶35} "The trial court erred and committed an abuse of discretion, including adopting the magistrate's decision, by ordering the appellant to pay a fine of $250.00, awarding attorneys' fees, and ordering other improper purge conditions."

{¶36} Mother argues the trial court erred in adopting the magistrate's recommendations relating to the purge conditions attached to the court's civil contempt finding. She claims the trial court abused its discretion by ordering the conditions because they are both unreasonable and compliance is either impossible or impractical. We do not agree.

### Propriety of Penalties and Purge Conditions

{¶37} R.C. 2705.05 prescribes the penalties for contempt and states that "[f]or a first offense, [the trial court may impose] a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both." R.C. 2705.05(A)(1). The trial court may also require the contemnor to pay costs and the moving party's attorney fees. *See Spicker v. Spicker*, 7th Dist. Columbiana No. 01 CO 52, 2003-Ohio 3553, ¶ 48. In the exercise of its discretion in a civil contempt proceeding, a court has the ability to exercise its equitable powers in fashioning a coercive remedy designed to achieve compliance with its orders. *Winebrenner v. Winebrenner*, 11th Dist. Lake No. 96-L-033, 1996 WL 761996, *3 (Dec. 6, 1996). "It is well to remember that in a contempt situation, it is the court who is the offended party even though the issue may

11

Case No. 2020-G-0275

have been raised by one of the litigants." *Id.* In effect, therefore, a court may fashion remedies authorized by statute as well as those it deems equitably suitable to require compliance.

{¶38} Here, the trial court ordered appellant to serve 10 days in jail and pay a fine of $250. This order was suspended pending compliance with its order. As we have already concluded the trial court's contempt finding was proper, and the punitive terms are within statutory parameters, we discern no error in the court's imposition of these penalties.

{¶39} The court also adopted the magistrate's recommendation that father should receive, in addition to his regular parenting time, 13 consecutive days of make-up parenting time. This time represents the period mother withheld father's visitation. The record supports the court's finding that father lost 13 days of visitation due to mother's unilateral decision to withhold visitation. One can reasonably conclude that this order was designed to urge, if not coerce, mother to obey the court's visitation order. That is, if she does not, she will face the possibility of losing her scheduled visitation with C.L. for an equal period of time that she withholds visitation from father. We conclude this remedy is both reasonable and equitable.

{¶40} Mother maintains, however, the purge conditions are impossible or impractical. It appears her position is based upon her belief that the purge conditions, in essence, function to regulate her future conduct, which is an impossible or unreasonable effort to punish a future violation which has not occurred. We do not agree.

{¶41} The trial court rightfully determined appellant violated the previous order and further concluded father should be entitled to the make-up parenting time he lost due

12

to mother's violation. These conditions are purely remedial. To the extent the conditions, in fact, dissuade mother from violating an order in the future is coincidental: The conditions do not control or function to regulate or punish mother's future conduct; rather, they are simply examples of what might occur if mother, in the exercise of her private discretion and autonomy, decides, again, to violate the court's order(s). Mother is required to comply with existing orders and afford father the visitation of which she previously deprived him. These conditions are neither impossible to comply with nor impractical or unreasonably. Mother's argument therefore is without merit.

## Award of Attorney Fees and Costs

{¶42} Post-decree attorney fees and expenses are governed by R.C. 3105.73(B), which states:

{¶43} "In any post-decree motion or proceeding that arises out of an action for divorce, * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

{¶44} The statute gives a trial court wide latitude to award attorney fees and litigation expenses if it finds the award equitable. *Cutter v. Cutter*, 8th Dist. Cuyahoga No. 96375, 2012-Ohio-358, ¶ 26. On appeal, the trial court's decision is reviewed under an abuse of discretion standard. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69 (1991). The reviewing court places great reliance upon the discretion of the trial court,

both in the finding of contempt and the penalty imposed. *Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, ¶ 36.

{¶45} The record includes testimony from father's attorney regarding her hourly rate and fees related to the filing of the motion to show cause and prosecuting the same. Mother offers nothing to undermine the credibility of this testimony. Moreover, mother's conduct triggered the filing of the motion. Mother was unable to show cause regarding why she should not be held in contempt, and, as discussed throughout this opinion, we find no error in the trial court's determination. Given mother's conduct in relation to the trial court's previous order, we conclude the underlying judgment requiring mother to pay costs and attorney fees is equitable.

{¶46} Mother's second assignment of error lacks merit.

{¶47} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

Case No. 2020-G-0275