[Cite as *Grand Voiture d'Ohio Societe des 40 et 8 v. Montgomery Cty. Voiture No. 34 la Societe 40 et 8*, 2024-Ohio-5410.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| GRAND VOITURE D'OHIO SOCIETE DES 40 ET 8 | : | |
| | : | |
| | : | C.A. No. 30056 |
| Appellee | : | |
| | : | Trial Court Case No. 2018 CV 01457 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MONTGOMERY COUNTY VOITURE NO. 34 la SOCIETE 40 ET 8, et al. | : | Court) |
| | : | |
| | : | |
| Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 15, 2024

. . . . . . . . . . .

CHARLES J. SIMPSON, Attorney for Appellant

KEVIN A. BOWMAN, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-appellant Charles J. Simpson appeals from judgments of the

Montgomery County Common Pleas Court finding him in contempt of court and imposing sanctions. For the reasons that follow, we will affirm the judgments of the trial court.

## I. Facts and Procedural Background

{¶ 2} This is the most recent appeal in a protracted series of state and federal cases involving Simpson, Montgomery County Voiture No. 34 la Societe des 40 Hommes et 8 Chevaux ("Voiture Locale"), Grande Voiture D'Ohio la Societe des 40 Hommes et 8 Chevaux ("Grande Voiture"), and various factions of the charitable organization La Societe des 40 Hommes et 8 Chevaux, commonly known as "The Forty and Eight." Because the procedural history is lengthy and complex, we will repeat a brief summary of the background of these cases for purposes of clarity. In *Huber Hts. Veterans Club, Inc. v. Grande Voiture d'Ohio La Societe des 40 Hommes et 8 Chevaux*, 2021-Ohio-2784, ¶ 3-10 (2d Dist.), we stated as follows:

The Forty and Eight has a hierarchical structure consisting of a national organization and associated state and local organizations. Voiture Nationale is the national organization, and Grande Voiture is the Ohio state-level organization. [Voiture Locale] is the county-level organization in Montgomery County. [Huber Heights Veterans Club ("HHVC")] purports to be a successor organization to Voiture Locale that is no longer associated with The Forty and Eight.

At some point, Voiture Locale began engaging in conduct that was contrary to the constitution, bylaws, and other governing documents of the national and state-level organizations. Among other things, Voiture Locale

adopted an amended constitution, elected a new board of governors under that amended constitution, created an auxiliary membership, and failed to pay national dues.

In 2017, Grande Voiture initiated internal disciplinary proceedings against Charles Simpson, one of the local organization's officers under the new constitution, and permanently expelled him from membership for life. Following that determination, Voiture Locale resolved to prohibit Grande Voiture officials from entering Voiture Locale's premises, located at 4214 Powell Road in Huber Heights. Another member of Voiture Locale, however, filed a criminal trespass complaint against Simpson with the Huber Heights police.

In 2018, Grande Voiture brought an action against Voiture Locale seeking declaratory and injunctive relief, and an accounting. Montgomery C.P. No. 2018-CV-1457. Voiture Locale filed a counterclaim against Grande Voiture and a third-party complaint against Voiture Nationale, alleging that Grande Voiture and Voiture Nationale engaged in actions to wrongfully take possession and control of its property, as well as extortion, coercion, libel, slander and defamation.

On April 28, 2019, the trial court in Case No. 2018-CV-1457 granted summary judgment to Grande Voiture and Voiture Nationale. The court noted: "The evidence in the record is undisputed that Montgomery Voiture Locale No. 34 has violated numerous provisions of the state and national

constitutions and is now being run by nonmembers of the 40 and 8, such as Defendant Simpson, who was expelled permanently from membership." The trial court held that Voiture Locale was bound by the constitutions of the organization at the national, state, and local levels, as well as the other rules promulgated by the national and state-level organizations.

The court voided all actions taken by Voiture Locale that were in violation of those constitutions, invalidated Voiture Locale's amended constitution, and dissolved the purported board of directors appointed under that constitution. The court further granted an injunction, which, among other things, barred Simpson from participating in or interfering with the affairs of Voiture Locale. . . . We affirmed the trial court's judgment. *Grande Voiture D'Ohio La Societe des 40 Hommes et 8 Chevaux v. Montgomery Cty. Voiture No. 34 La Societe des 40 Hommes et 8 Chevaux*, 2d Dist. Montgomery No. 28388, 2020-Ohio-3821 [("*Grande Voiture I*")].

Despite the trial court's rulings, Simpson (a licensed attorney) has continued to act ostensibly on behalf of Voiture Locale, either as a purported officer or as an attorney retained by the now-dissolved board of directors. These actions have included filing a forcible entry and detainer action in municipal court . . ., a bankruptcy petition for Voiture Locale in bankruptcy court . . ., and additional litigation in common pleas court . . . . Several of the lawsuits challenged conduct by Grande Voiture officials with respect to the local organization's property. In addition, based on Simpson's belief

that Voiture Locale was a non-profit corporation under Ohio law that was separate and apart from The Forty and Eight, Simpson filed paperwork to change the name of Voiture Locale to the Huber Heights Veterans Club (HHVC) and to have the Powell Road property retitled in that name.   . . .

To date, Simpson has been unsuccessful at every turn.   The municipal court, bankruptcy court, and common pleas court actions were resolved based on res judicata and/or due to Simpson's lack of authority to act on behalf of Voiture Locale. . . .

{¶ 3} In this case, Case No. 2018-CV-1457, the trial court granted summary judgment to Grande Voiture and issued an injunction on April 28, 2019.   The injunction barred Simpson from participating in or interfering with the affairs of Voiture Locale.   The judgment also ordered Simpson, among other things, to provide an accounting of assets and debts.   We affirmed the trial court's judgment in *Grande Voiture I*.

{¶ 4} Less than two weeks after the trial court rendered summary judgment, Simpson filed a bankruptcy action on behalf of Voiture Locale while purporting to act as one of its officers.   Therefore, Grande Voiture filed a May 9, 2019 motion for contempt against Simpson for violations of the injunctions and later supplemented that motion with additional alleged violations of the injunction.   On March 4, 2020, the trial court issued a finding of contempt against Simpson for repeated violations of the injunction, including, but not limited to, filing documents with the Ohio Secretary of State and renaming the local level of the organization from Voiture Locale to HHVC.   As a result of the contempt finding, on June 29, 2020, the court ordered sanctions against Simpson in the sum of

$39,767.22 for attorney's fees, costs, and expenses incurred by Grande Voiture. Simpson appealed.

{¶ 5} Meanwhile, Grande Voiture had filed a motion in the trial court seeking to correct the record title to the property conveyed by Simpson, because he had failed to comply with the March 4, 2020 contempt order. The motion was granted on September 17, 2020, and the trial court ordered the County Recorder to: (1) record the order granting the motion, (2) remove HHVC from the record chain of title, and (3) return title to Voiture Locale. Simpson filed an appeal of that order. The contempt judgment and sanctions and the title correction order were consolidated on appeal. We affirmed both the trial court's orders. *See Grande Voiture d'Ohio La Societe des 40 Hommes et 8 Chevaux v. Montgomery Cty. Voiture No. 34 La Societe Des 40 Hommes et 8 Chevaux*, 2021-Ohio-1430 (2d Dist.) ("*Grande Voiture II*").

{¶ 6} On March 9, 2021, Grande Voiture filed a Civ.R. 70 motion to authorize the filing of a name change with the Secretary of State due to Simpson's continued failure to comply with the court's order. Simpson filed a motion to strike Grande Voiture's motion as frivolous and to impose sanctions. On March 13, 2021, the trial court granted Grande Voiture's motion and overruled Simpson's motion. We affirmed the trial court's judgment. *See Grande Voiture D'Ohio La Societe Des 40 Hommes et 8 Chevaux v. Montgomery Cty. Voiture No. 34 La Societe Des 40 Hommes et 8 Chevaux*, 2021-Ohio-2429 (2d Dist.) ("*Grande Voiture III*").

{¶ 7} On May 26, 2022, Grande Voiture filed another motion for contempt against Simpson for failing to do the specific things the trial court had ordered him to do in its

March 4, 2020 contempt order. The March 4, 2020 order had specifically directed Simpson to comply with five mandates: (1) pay all reasonable attorney's fees, litigation expenses, and other costs that Grande Voiture incurred as a result of Simpon's failure to abide by the injunction; (2) take all necessary actions and pay all reasonable costs to restore the name of Voiture Locale with the Ohio Secretary of State; (3) take all necessary actions and pay all necessary costs to restore title of the Powell Road property in the name of Voiture Locale; (4) pay all outstanding invoices from the U.S. Trustee Payment Center for fees related to the bankruptcy case; and (5) provide Grande Voiture with information on every bank account held, or previously held, in the name of Voiture Locale or HHVC, and provide all financial information within his possession, including all documents provided to or produced by CC One of Clark County, an accounting service owned and operated by Simpson's relative. Grande Voiture's motion alleged that Simpson had failed to do any of these five things and, as a sanction, Grande Voiture requested attorney's fees in excess of $78,000.

{¶ 8} Simpson filed a response to Grande Voiture's motion for contempt. Simpson also filed an answer and counterclaim with a jury demand. Simpson then filed a motion requesting a voluntary order of disqualification of the trial court judge, primarily on the basis that the trial court judge had not agreed with Simpson's previous arguments to the court. The trial court denied any partiality, but because the court had "openly expressed concerns with [Simpson's] fitness to practice law," the trial court agreed to transfer the case to another judge.

{¶ 9} Following the transfer, the trial court granted Grande Voiture's motion to

strike Simpson's answer and counterclaim. The trial court explained that Simpson was not permitted to file an answer or counterclaim after the pleadings had closed and a final judgment had been rendered.

{¶ 10} Simpson then filed another series of motions. He filed a motion to reconsider the trial court's decision to strike his answer and counterclaim, which the trial court overruled. He filed a "Jury Demand Repeated and Confirmed" along with a request for leave to file a motion for summary judgment on the stricken answer and counterclaim. These also were overruled by the trial court. Simpson filed a motion for judgment on the pleadings, which was stricken. Simpson then filed a motion to vacate the order striking his motion for judgment on the pleadings. Additionally, Simpson filed a motion requesting that the trial court judge disqualify herself primarily because the judge "refuse[d] to consider the merits of Defendant's Answer and Counterclaim and motions and refuse[d] Defendant's request for a trial by jury." This request was also denied.

{¶ 11} The trial court set a hearing on Grande Voiture's May 26, 2022 contempt motion for October 21, 2022. Simpson filed a motion in limine and reasserted his request for a jury trial. The trial court overruled Simpson's motion in limine and jury demand. Simpson filed a motion to reconsider and another answer and counterclaim with an additional jury demand. The trial court denied these filings. In response to his motions being denied, Simpson filed an affidavit of disqualification with the Ohio Supreme Court. The Ohio Supreme Court denied Simpson's request for disqualification on October 6, 2022. *In re Disqualification of Melnick*, 2022-Ohio-4431, ¶ 7.

{¶ 12} On October 7, 2022, Simpson filed a motion to continue the October 21,

2022 hearing, due to Simpson's having filed an original action with this court and the need to schedule a jury trial. The next day, Simpson filed a Civ.R. 60(B) motion requesting relief from the April 28, 2019 and June 29, 2020 judgments and requesting sanctions against Grande Voiture and their counsel of $126,000. The trial court denied these motions and denied Simpson's motion to reconsider the denials. Simpson's original action was eventually dismissed. *See State ex rel. Simpson v. Melnick*, 2023-Ohio-1236 (2d Dist.).

{¶ 13} A hearing on Grande Voiture's motion for contempt was held on October 21, 2022, at which Frank Kronen, Ronald Kozar, and Charles Simpson testified. Prior to the hearing, it was stated on the record that Simpson had paid the nearly $40,000 in attorney's fees, Grande Voiture had reacquired the property on Powell Road, and Grande Voiture had reversed Simpson's action of changing the name of Voiture Locale to the HHVC. Accordingly, the remaining issues for the contempt hearing were: 1) Simpson's failure to turn over the financial documents; 2) Simpson's failure to pay the outstanding invoices from the U.S. Trustee Payment Center related to the bankruptcy case; and 3) Simpson's continued participation in filing lawsuits, which resulted in Grande Voiture's incurring additional attorney's fees and expenses.

{¶ 14} Frank Kronen, the National Commander and Chef de Chemin de Fer in the Forty and Eight organization, testified on behalf of Grande Voiture. He testified that Grande Voiture is an Honor Society of American veterans that operates as a charitable organization. Kronen, in his prior capacity as Grand Avocat for Grande Voiture, initiated the lawsuit against Simpson and Voiture Locale. Following the grant of the permanent

injunction, Simpson repeatedly sued Grande Voiture and its members in local, state, and federal courts. According to Kronen, the attorney's fees incurred in response to Simpson's filings had negatively affected all members of the organization in the State of Ohio. In order to cover its attorney's fees in the previous litigation, the organization had to sell off its Huber Heights property.

{¶ 15} During the hearing, Simpson testified that he had not turned over any financial documents since the March 4, 2020 order. According to Simpson, who had been the financial officer of Voiture Locale, Grande Voiture gained access to all of the financial information when it reclaimed the Voiture Locale and, therefore, he did not need to turn over anything. Oct. 21, 2022 Tr. 62-63. He also testified that he had not turned over any money to Grande Voiture from the closure of the bank accounts or any information regarding those bank accounts. Simpson acknowledged that CC One of Clark County was in possession of financial documents, but he did not provide those to Grande Voiture. *Id.* at 64-65. Simpson further admitted he had not paid any outstanding invoices from the bankruptcy case; Simpson claimed that "the Court ordered Mr. Kronen to pay it," not him. *Id.* at 63. He also admitted to filing 23 different local, state, and federal lawsuits since the March 4, 2020 order, either on his own behalf or on behalf of the HHVC board of directors, of which he was a board member.

{¶ 16} Ronald Kozar, a licensed attorney in Dayton, Ohio, who had practiced in civil litigation for over 30 years, testified as an expert as to the reasonableness of Grande Voiture's requested attorney's fees. According to Kozar, who had reviewed the 23 various lawsuits initiated by Simpson, both the hourly fee and the amount of work incurred

by Grande Voiture were reasonable. The total amount of attorney's fees incurred between July 10, 2020, and October 3, 2022, was $95,312.50.

{¶ 17} On October 22, 2022, Simpson filed a motion for sanctions requesting an award of attorney's fees against Grande Voiture and its attorneys "on account of their frivolous and harassing conduct." Grande Voiture opposed Simpson's motion and his supplemental motion for attorney's fees. Simpson requested $250,353.00 in attorney's fees and expenses. Grande Voiture supplemented their attorney's fees statement to include fees and expenses incurred during October 2022, increasing the requested total amount to $102,612.50.

{¶ 18} On December 7, 2022, the trial court issued a decision holding Simpson in contempt. The trial court issued the following orders in its decision:

1. Simpson shall pay Plaintiff's attorney's fees in the amount $102,612.50 to compensate Plaintiff for the attorney's fees accrued as a result of Simpson's unlawful filing of twenty-three lawsuits in violation of the April 28, 2019 Order and the contempt proceedings within **6 months from the date of this Order.**

2. Simpson shall personally provide all financial documents and account information, including tax and accounting information held with CC-1 of Clark County to Plaintiff's attorney, Kevin Bowman, within **30 days** of this Order. This Order shall not be construed in any manner to require [Plaintiff] to take any action to procure these documents or information.

3. Simpson shall pay the U.S. Trustee Invoices as represented in Exhibit 7

within **30 days** from the date of this Order.

4. Simpson shall file certification of compliances within **10 days after the expiration of each deadline specified above**. Simpson's certification of compliance shall include the signature of Plaintiff's attorney that compliance has been met. For clarification, the deadline for final certification of compliance of the three corticaton's [sic] shall be filed **ten days after the six-month deadline for attorney's fees**.

5. Compliance with the requirements listed above shall operate as the purge for contempt sanctions.

(Emphasis in original.) Decision Sustaining Plaintiff's Motion for Contempt (Dec. 7, 2022), p. 11-12.

{¶ 19} On December 8, 2022, Simpson filed a motion requesting findings of fact and conclusions of law and a motion to vacate the trial court's December 7, 2022 order. The trial court overruled Simpson's request for findings of facts and conclusions of law and his motion to vacate the December 7, 2022 order.

{¶ 20} On March 17, 2023, Grande Voiture filed a notice of non-compliance by Simpson with the second, third, and fourth mandates of the December 7, 2022 decision. A subsequent motion requested sanctions against Simpson for failing to comply with all five of the trial court's December 7, 2022 mandates.

{¶ 21} On March 29, 2023, the trial court judge voluntarily recused herself and a visiting judge was appointed by the Ohio Supreme Court.

{¶ 22} On June 20, 2023, Simpson filed a motion to strike and deny Grande

Voiture's notice of noncompliance and motion for further contempt sanctions because the cause had been removed to the federal United States District Court for the Southern District of Ohio in Case No. 3:23-cv-155. On September 28, 2023, Grande Voiture filed a notice of remand stating that the federal court had dismissed the federal case and remanded the cause to the Common Pleas Court. *See Grande Voiture D'Ohio La Societe des 40 Hommes et 8 Chevaux v. Montgomery Cty. Voiture No. 34 La Societe des 40 Hommes et 8 Chevaux*, No. 3:23-cv-155, 2023 WL 6554068 (S.D. Ohio Sept. 27, 2023). Grande Voiture reasserted that Simpson had failed to comply with the trial court's December 7, 2022 mandates and requested the court to impose sanctions.

{¶ 23} Following the remand, the trial court scheduled a hearing for October 17, 2023, on the motion to enforce sanctions. On October 4, 2023, Simpson filed a motion to continue the hearing on the motion to enforce sanctions, because Simpson wanted all the pending issues to be resolved by a jury. The trial court denied his motion. However, the hearing on the motion to enforce sanctions was eventually reset to December 14, 2023.

{¶ 24} On October 11, 2023, Simpson filed a motion to dismiss Grande Voiture's motion to enforce sanctions. Simpson also filed a motion asking the court to take judicial notice of the following actions pending between the parties and certain filings in those cases: *Huber Hts. Veterans Club v. Bowman*, No. 3:22-cv-159 (S.D. Ohio); *Huber Hts. Veterans Club, Inc., v. VFW Post 9966*, No. 3:23-cv-121 (S.D. Ohio); *Huber Hts. Veterans Club v. Webb*, Montgomery C.P. No. 2021 CV 4538; and *Huber Hts. Veterans Club Inc., v. VFW Post 9966*, Clark C.P. No. 2021 CV 277. The trial court overruled Simpson's

motion to dismiss. The court further indicated it would take judicial notice of the court proceedings between the parties and that certain documents had been submitted, but it would not accept the documents submitted in other cases for the truth of the matters asserted therein.

{¶ 25} A purge hearing was held on December 14, 2023. When asked if Simpson had furnished all the financial records regarding the income, assets, or debts of Voiture Locale within 60 days of the trial court's December 7, 2022 order, Simpson responded "There is no requirement directed to me to furnish a financial statement or any kind of accounting." Dec. 14, 2023 Tr. 18-19. When asked if Simpson had provided the information on every bank account as previously ordered on April 28, 2019, Simpson responded in the negative. *Id.* at 19. When asked if Simpson had paid the outstanding invoices from the U.S. Trustee Payment Center, Simpson denied that he had. *Id.* at 20.

{¶ 26} When the trial court asked Grande Voiture if it had received the financial records that had been required by the court's April 28, 2019 order, Grande Voiture responded in the negative. Grande Voiture also denied having received information on the bank accounts as previously ordered. Grande Voiture further indicated that the invoices from the U.S. Trustee Payment Center had not been paid.

{¶ 27} At the conclusion of the hearing, the trial court stated that it was going to grant Grande Voiture's motion to impose contempt sanctions. The court instructed the parties to submit an entry reflecting that $102,612.50 be ordered plus statutory interest from the date it was ordered. The court also instructed the parties to include in the entry the orders of the court with respect to the documents that had not yet been turned over

as previously instructed and the payment of the trustee amount still due. The trial court indicated that it wished to impose a $100 weekly penalty as initially described by the prior trial court judge but requested that the parties brief whether the court had any authority to do that within five days of the hearing. Although the court permitted both parties to submit an entry, the court indicated it would only sign an entry that reflected its orders as stated on the record.

{¶ 28} Following the hearing, Simpson filed a motion to dismiss the motion for contempt and submitted a proposed entry. The trial court did not sign the proposed entry.

{¶ 29} Grande Voiture prepared an entry that the trial court signed. On December 27, 2023, the trial court issued a decision holding Simpson in contempt of the trial court's April 28, 2019 judgment and finding that Simpson had failed to comply with the court's December 7, 2022 order. Grande Voiture was awarded $102,612.50 in attorney's fees with statutory interest and the trial court ordered Simpson to pay a weekly fine of $100 until Simpson paid the attorney's fees due and the U.S. Trustee Invoices and provided the financial documents and accounting information to Grande Voiture's attorney. Simpson's motion to dismiss was overruled, and Simpson was ordered to pay the costs.

{¶ 30} Following the December 27, 2023 decision, Simpson filed a motion requesting findings of fact and conclusions of law, a motion to strike the court's order, a motion for judgment on the pleadings, and a motion for a new trial. The trial court overruled all of Simpson's motions. Simpson also requested reconsideration of the trial court's denial of his motions, which likewise was denied. Simpson appeals.

{¶ 31} As a preliminary matter, the notice of appeal filed in this case purports to appeal on behalf of "Montgomery County Voiture No. 34 [etc.] and Charles J. Simpson." The trial court has ordered that Simpson may no longer act as an officer of the organization, and we affirmed that order in a prior appeal. *See Grande Voiture I,* 2020-Ohio-3821 (2d Dist.). The case now before us, Montgomery C.A. No. 30056, deals exclusively with the finding of contempt and sanctions imposed against Simpson personally, and we will proceed accordingly.

## II. December 27, 2023 Order

{¶ 32} In his first assignment of error, Simpson alleges the following:

The Court erred in filing the order of Dec. 27, 2023 without the presiding judge's signature or determination of facts by the presiding judge. Said order is null and void.

{¶ 33} On December 7, 2022, the trial court issued an order sustaining Grande Voiture's motion for contempt against Simpson. In March 2023, the trial court judge who issued the December 7, 2022 order recused herself, and a visiting judge was assigned by the Supreme Court of Ohio on May 10, 2023. The December 27, 2023 order imposing sanctions against Simpson was issued by the visiting judge. Simpson alleges that the trial court lacked jurisdiction to issue the December 27, 2023 order because the visiting judge did not sign the entry and failed to provide findings of fact and conclusions of law upon Simpson's timely request. We disagree.

### a. Electronic Signature

{¶ 34} "Advancements in computer technology have allowed for the

implementation of an electronic signature that may be used in place of a judge's physical signature. The Supreme Court of Ohio, through Sup.R. [5], has promulgated minimum standards allowing for a court to adopt a local rule that authorizes the use of an electronic signature to authenticate an electronic judgment entry." *State ex rel. Engelhart v. Russo*, 2011-Ohio-2410, ¶ 26 (8th Dist.), *rev'd in part on other grounds*, *State ex rel. Engelhart v. Russo*, 2012-Ohio-47, ¶ 25. Likewise, R.C. 1306.22 provides that courts "may adopt rules pertaining to the use of electronic records and electronic signatures." R.C. 1306.22(B).

{¶ 35} The Montgomery County Common Pleas Court Local Rule (Mont. Co. C.P.R.) 1.15 previously stated that, "[e]xcept as otherwise provided . . ., all civil and criminal cases, including all pleadings, motions, briefs, memoranda of law, deposition transcripts, transcripts of proceedings, orders or other documents, shall be filed electronically through the Court's authorized electronic filing system ('eFile system')." [1] This rule included a requirement that the court electronically file all court-initiated filings. Mont. Co. C.P.R. 1.15(B). Although attorneys could electronically sign an e-filed document by typing "/s/ [name]," Mont. Co. C.P.R. 1.15(F)(4)(e) addressed signatures of a judge or judicial officer. It stated that "eFiled documents may be signed by a Judge or judicial officer via a digitized image of his or her signature combined with a digital signature. All orders, decrees, judgments and other documents signed in this manner shall have the same force and effect as if the Judge had affixed his or her signature to a

---

[1] The Montgomery County Court of Common Pleas Local Rules were amended on July 1, 2024. We cite to the version of the local rules that was in effect at the time this action was pending in the lower court.

paper copy of the order and journalized it."

{¶ 36} In this case, the visiting judge typed his name electronically with "/s/" before his name. It did not strictly comply with the local rules because his signature was not a digitized image of his signature. Nevertheless, it still qualified as an electronic signature since it had an otherwise recognized digital/electronic signature.

{¶ 37} R.C. 1306.01(H) defines "Electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record. A signature that is secured through blockchain technology is considered to be in an electronic form and to be an electronic signature." "Electronic signatures require the use of a personal password or code or unique identifier entrusted to the person whose signature in an electronic form ultimately appears on the document." *State v. Anderson*, 2010-Ohio-2085, ¶ 55 (8th Dist.) (Gallagher, A.J., concurring). "If a law requires a signature, an electronic signature satisfies the law." R.C. 1306.06(D).

{¶ 38} Because approving the proposed order (and the electronic signature within it) was an act of the judge, it is attributable to the judge and must be given full legal effect. *See* R.C. 1306.08(A) ("An electronic record or electronic signature is attributable to a person if it was the act of the person"); R.C. 1306.08(B) ("The effect of an electronic record or electronic signature attributed to a person under division (A) of this section shall be determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law."); R.C. 1306.06(A) ("A record or signature may not be denied legal effect or

enforceability solely because it is in electronic form."). Here, the visiting judge indicated precisely what he wanted in the entry at the time of the December 13, 2023 hearing and instructed the parties to submit proposed entries reflecting his decision. Mont. Co. C.P.R. 2.17(C) provided that a judge "may approve or disapprove any proposed judgment entry," and a judgment becomes effective "upon the filing and journalization of a judgment entry with the [c]lerk." The rule required only that "a" judgment entry be filed, making no distinction between an entry prepared by a judge and a proposed entry submitted by a party and ratified by a judge as the judgment of the court. The December 27, 2023 entry was a proposed entry by Grande Voiture that was adopted by the trial court. It reflected the same orders the judge imposed at the December 13, 2023 hearing, bore his electronic signature, and was journalized.

**{¶ 39}** Although the trial court did not strictly comply with Mont. Co. C.P.R. 1.15(F)(4)(e), the rule is procedural and designed to facilitate case management. "Local rules of court are promulgated by and applied by local courts for the convenience of the local bench and bar. They do not implicate constitutional rights." *Smith v. Conley*, 2006-Ohio-2035, ¶ 9. While visiting judges should be aware of and comply with the local rules of the court in which they are presiding, we see nothing under these circumstances that renders the decision void or necessitates reversal.

### b. Findings of Facts and Conclusions of Law

**{¶ 40}** Simpson also argues in his first assignment of error that the trial court erred by not including findings of fact and conclusions of law in its December 7, 2022, and

December 27, 2023 orders. Simpson relies on Civ.R. 52, which states that a party may request findings of fact and conclusions of law under certain circumstances. However, if Civ.R. 52 does not require the court to issue findings of fact and conclusions of law, then the court has no duty to issue them, even upon a timely request of a party. *Savage v. Cody-Ziegler, Inc.*, 2006-Ohio-2760, ¶ 13-18 (4th Dist.). The Ohio Supreme Court has explicitly held that "Civ.R. 52 findings of fact and conclusions of law are unnecessary in a contempt proceeding." *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 12 (1981). Proceedings held to determine whether an individual has complied with certain purge conditions also do not require findings of fact and conclusions of law. *Machnics v. Sloe*, 2008-Ohio-1133, ¶ 65 (11th Dist.). Therefore, we cannot conclude that the trial court erred in denying Simpson's repeated requests for findings of fact and conclusions of law, and the absence of such findings and conclusions did it render the trial court's December 7, 2022, and December 27, 2023 orders void.

### c. Civil Rule 63(B)

{¶ 41} Simpson relies on Civ.R. 63(B) in support of his contention that the visiting judge lacked the authority to issue the December 23, 2023 order. We do not agree.

{¶ 42} "Civ.R. 63(A) governs jury trials and Civ.R. 63(B) comes into effect after the verdict or findings are made." *Vergon v. Vergon*, 87 Ohio App.3d 639, 643 (8th Dist. 1993). The rule provides as follows:

> If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge

designated by the administrative judge . . . may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial.

Civ.R. 63(B).

**{¶ 43}** Simpson cites no authority, and this court's research has revealed none, to indicate that this rule is applicable to the situation at bar. *See Hertel v. Houbler*, 1988 WL 84235, *3 (5th Dist. Aug. 5, 1988) (Civ.R. 63 "expressly refers to changes of judges that occurred during a jury trial, or after judgment but before entry. We are unwilling to extend the rule beyond that particular scope.") In the instant case, there was no trial, and the trial court's December 7, 2022 order adequately set forth the court's decision on the merits of the contempt proceedings. The visiting judge, on the other hand, presided over the purge hearing and was tasked with determining whether Simpson had purged the contempt orders. "[A]t a purge hearing, 'the propriety of the contempt finding or the purge conditions is not in question,' and the hearing is limited to determining whether the contemnor complied with conditions imposed for purging contempt." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 2014-Ohio-4254, ¶ 20, quoting *Liming v. Damos*, 2012-Ohio-4783, ¶ 30. This merely required the visiting judge to review the trial court's December 7, 2022 order and determine whether Simpson had complied with that order. Accordingly, Civ.R. 63(B) did not apply.

**{¶ 44}** Simpson's first assignment of error is overruled.

### III.  Trial Court's Jurisdiction and Authority

{¶ 45} Simpson's second and third assignments of error relate to the trial court's contempt and sanction orders. The two assignments of error are as follows:

The Court erred and exceeded its jurisdiction and authority by proceeding, conducting and allowing the proceedings in this matter.

The Court erred in denying to Defendants their right to a trial by jury and denying to Defendants their right to answer defend and counterclaim Plaintiff's claims.

{¶ 46} According to Simpson, Grande Voiture's motion for contempt was an attempt to institute a new civil action, which entitled him to a jury trial. Simpson contends that, because Grande Voiture failed to comply with the Civil Rules when initiating a new cause of action, the trial court could not issue the December 27, 2023 decision. As part of this argument, Simpson claims he was denied his right to a jury trial and that the trial court refused to consider his answer and counterclaim. Finally, Simpson challenges the trial court's finding of contempt and sanctions. All of Simpson's arguments are meritless.

### a. The Trial Court's Jurisdiction

{¶ 47} On May 26, 2022, Grande Voiture filed a motion asking the trial court to "order Simpson to show cause why he should not be held in contempt for violation of the permanent injunction, and award reasonable attorney's fees as a sanction." Grande Voiture's Motion for Contempt, p. 7. Specifically, Grande Voiture alleged that Simpson had violated the Court's April 28, 2019 injunction and had failed to comply with the court's March 4, 2020 order.

{¶ 48} According to Simpson, the trial court's jurisdiction of the parties ended when

the April 28, 2019 final judgment was entered.   Therefore, "[t]he court has no jurisdiction or authority over any post-judgment matter."   Appellant's Brief, p. 13.   We disagree.

{¶ 49} In *Hosta v. Chrysler*, 2007-Ohio-4205, ¶ 32 (2d Dist.), we explained that:

> When a permanent injunction has been issued by the trial court on the merits of a claim, the court has continuing jurisdiction to enforce the injunction.   A permanent injunction may be enforced as an act of the court and disobedience of the order may be punished as contempt.   The permanent injunction may be enforced by motion without the necessity of an independent action.

(Citations omitted.)

{¶ 50} "An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense." R.C. 2307.01.   A contempt proceeding, however, is not an "action." *Champaign Cty. Court of Common Pleas v. Fansler*, 2016-Ohio-228, ¶ 20 (2d Dist.). Rather, a contempt proceeding is a "special proceeding" the purpose of which " 'is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice.' " *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph two of the syllabus.   The common pleas court "has both the statutory authority under R.C. 2705.02(A) and the inherent power to punish the disobedience of its orders in contempt proceedings."   *Melnick*, 2023-Ohio-3864, at ¶ 6, citing *Zakany v. Zakany*, 9 Ohio St.3d

192 (1984), syllabus.

{¶ 51} On April 28, 2019, the trial court rendered summary judgment in favor of Grande Voiture and granted injunctive relief barring Simpson "from further participation in the affairs of [Voiture Locale]" and "from further action as [an] officer[ ] of the organization." The judgment also ordered Simpson to provide an accounting of assets and debts and prohibited both Simpson and Voiture Locale "from selling, transferring, or otherwise alienating the real property of [Voiture Locale]." We affirmed that decision on direct appeal. *See Grande Voiture I,* 2020-Ohio-3821. It is undisputed that the April 28, 2019 injunction was permanent in nature. Notably, we affirmed on direct appeal a prior judgment in which Simpson had been found in contempt of the April 28, 2019 injunction. *See Grande Voiture II*, 2021-Ohio-1430. Accordingly, the trial court had jurisdiction to resolve Grande Voiture's post-judgment contempt motion.

{¶ 52} Because no complaint was required to enforce the permanent injunction or to file a motion for contempt, Simpson was not entitled to file an answer or counterclaim to Grande Voiture's motion for contempt. *See, e.g.,* Civ.R. 12(A) (providing for service of an answer after a complaint is served, not in any other context); Civ.R. 7 (distinguishing between pleadings and motions); Civ.R. 6(C) (setting forth time in which to respond to motions as distinct from pleadings). Nor was Simpson entitled to a jury trial on the contempt motion. "Generally, there is no right to a jury trial in contempt proceedings unless 'a long term of imprisonment is involved.' " *Melnick* at ¶ 9, quoting *Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty., & Mun. Emps., AFL-CIO*, 35 Ohio St.2d 197, 202 (1973). Grande Voiture's May 26, 2022 motion for contempt only

requested attorney's fees. Nothing in the record supports a determination that imprisonment, much less a long term of imprisonment, was a possible contempt sanction in this case. Indeed, the record before us reveals that Grande Voiture sought only monetary contempt sanctions and the trial court only imposed monetary contempt sanctions. Accordingly, Simpson was not entitled to a jury trial.

### b. Contempt Proceedings

{¶ 53} As to the merits of the trial court's finding of contempt, Simpson argues that the April 28, 2019 injunction merely restrained him from participating as a member or officer in the Forty and Eight organization and that he did nothing to violate that restriction. He provides no argument for his failure to comply with the trial court's March 4, 2020 order.

{¶ 54} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 2010-Ohio-2762, ¶ 4 (1st Dist.). "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268 (2d Dist. 1996), citing *ConTex, Inc. v. Consol. Technologies, Inc.*, 40 Ohio App.3d 94 (1st Dist. 1988). Clear and convincing evidence is the level of proof that would "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Once the movant establishes a prima facie case of contempt, the burden shifts to the nonmoving party to establish a defense by the preponderance of the

evidence." (Citations omitted.) *Lelak v. Lelak*, 2021-Ohio-519, ¶ 21 (2d Dist.).

**{¶ 55}** We review the trial court's decision in a civil-contempt proceeding for an abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 21, citing *Birkel*, 65 Ohio St.2d at 11. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

**{¶ 56}** Simpson has repeatedly argued that the April 28, 2019 injunction did not apply to him. His argument is premised on the theory that Voiture Locale is both an organization that is part of the national organization and a corporation that is a separate and distinct entity from the national organization. According to Simpson, it was the organization that was subject to the trial court's injunction, not the corporation, and he simply acted for the corporation, of which he remains an officer and member. We rejected this contention in *Grande Voiture II*. There, we affirmed the trial court's order finding him in contempt and explained:

As the trial court found, Simpson did much more than act as counsel for Voiture [Locale]. He signed a bankruptcy petition saying that he had records of the corporation (claiming that he was its treasurer). He knew that the former directors were prohibited from taking any actions for the corporation, so he had to know his litigation filings were enjoined by the trial court. He put up a mailbox and apparently diverted some mail. He failed to turn over the financial records. He filed a replevin action against a [Voiture Locale] member who had retrieved a parade vehicle from the club

property for safekeeping, and, while that action was filed before the injunction, Simpson continued to argue after the injunction that the vehicle belonged to the corporation, despite knowing that the corporation could no longer act on behalf of the ousted board. Simpson formally changed the name of the organization, and he prepared and recorded a deed transferring title of real property to the new name, despite knowing that the corporation had been enjoined from transferring or alienating any property.

Simpson's arguments in these assignments of error rest on the premise that the corporation is a separate entity from the organization and is not bound by the injunction. That premise has been repeatedly rejected, and the issue is res judicata.

*Grande Voiture II*, 2021-Ohio-1430, at ¶ 12-13 (2d Dist.).

**{¶ 57}** We again reject his contention in this case. Furthermore, the original action was filed against both Voiture Locale and Simpson as named defendants. The trial court's injunction specifically provided that "Defendant Charles Simpson . . . [is] hereby barred from further participation in the affairs of [Voiture Locale]," Simpson is "hereby barred from further action as [an officer] of the organization," and "Defendants are prohibited from selling, transferring, or otherwise alienating the real property of [Voiture Locale] or using it in any way other than its dedicated, exempt purpose." April 28, 2019 Judgment. The injunction further ordered "all financial records or other information regarding the income, assets, or debts, of [Voiture Locale]" be provided within 60 days from the order. The injunction applied directly to all defendants, including

Simpson.

**{¶ 58}** Further, the trial court's March 4, 2020 order was clear and definite. The trial court directed Simpson to: (1) pay all reasonable attorney's fees and other costs that Grande Voiture had incurred as a result of Simpson's failure to abide by the April 28, 2019 injunction, including the fees "incurred in the bankruptcy case, the forcible entry and detainer case, and in the Pellicer case, and for the fees incurred in this case in litigating the motion for contempt and the enforcement of the injunction; (2) take all necessary actions and pay all necessary costs to restore the original name of the corporation from HHVC; (3) "take all necessary actions and pay all necessary costs to restore title to the property in the name of" Voiture Locale; (4) pay all outstanding invoices from the U.S. Trustee Payment Center for fees related to his unauthorized filing of the bankruptcy; and (5) provide to Grande Voiture information on every bank account currently or previously held in the name of Voiture Locale or the HHVC and all financial information regarding Voiture Locale in his possession or control.

**{¶ 59}** On June 29, 2020, Simpson was found in contempt of the above orders and sanctioned. Simpson was ordered to pay $39,767.22 in attorney's fees. Notably, the trial court stated:

Defendant is cautioned that this Court retains jurisdiction to enforce the permanent injunction and that further violations may result in additional monetary or other sanctions. Defendant Simpson remains in specific violation of this Court's March 4, 2020 Order with respect [to] his filings with the Secretary of State in connection with the name Montgomery County

Voiture No. 34, the deed to the chateau, and the financial documents of Montgomery County No. 34. Defendants' failure to remedy these continuing violations may also result in additional monetary or other sanctions.

Decision Awarding Contempt Sanctions Against Simpson (June 29, 2020), p. 3.

{¶ 60} On May 26, 2022, Grande Voiture alleged that Simpson had continued to violate the permanent injunction and Simpson had yet to comply with any of the mandates in the court's March 4, 2020 order. A hearing on that motion was held on October 21, 2022. Prior to the hearing, it was stated on the record that Simpson had paid the attorney's fees covered by the June 29, 2020 order, Grande Voiture had reacquired the property on Powell Road, and Grande Voiture had reversed Simpson's actions of changing the name of Voiture Locale to the HHVC. Accordingly, the remaining issues for the contempt hearing were: 1) Simpson's failure to turn over the financial documents; 2) Simpson's failure to pay the outstanding invoices from the U.S. Trustee Payment Center related to the bankruptcy case; and 3) Simpson's continued participation in filing lawsuits in contravention of the permanent injunction.

{¶ 61} During the hearing, Grande Voiture submitted evidence of the 23 lawsuits initiated by Simpson since the last contempt finding and testimony that Simpson had not complied with the trial court's prior orders. Notably, Simpson admitted that he had not turned over any financial documents since the March 4, 2020 order, he had not paid any outstanding invoices from the bankruptcy case, and he had filed 23 different local, state, and federal lawsuits since the March 4, 2020 order, either on his own behalf or on behalf

of the HHVC board of directors, of which he was a board member.

{¶ 62} Grande Voiture needed only to prove the existence of a court order and Simpson's noncompliance with the order by clear and convincing evidence. Grande Voiture met its burden. None of Simpson's alleged defenses were reasonable or sufficient to justify his non-compliance. Therefore, the trial court did not abuse its discretion by issuing its December 7, 2022 decision finding Simpson in contempt of court.

### c. Sanctions

{¶ 63} The trial court's December 7, 2022 decision provided Simpson with the opportunity to purge his contempt by complying with the court's orders. He failed to do so. Accordingly, on December 27, 2023, the trial court awarded Grande Voiture $102,612.50 in attorney's fees, ordered Simpson to pay costs, and imposed a sanction of $100 per week until Simpson complied with the court's orders. Simpson does not challenge the reasonableness of the attorney's fees or the $100 per week fine imposed; rather, he challenges the trial court's authority to impose *any* sanction other than a fine of $200 pursuant to R.C. 2727.12. Simpson's argument is not persuasive.

{¶ 64} R.C. 2727.11 provides that "[a]n injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court, or by a judge who granted it in vacation, as a contempt." R.C. 2727.12 provides that:

> Upon being satisfied, by affidavit, of the breach of an injunction or restraining order, the court or judge who issued such injunction or order may

issue an attachment against the guilty party who shall pay a fine of not more than two hundred dollars, for the use of the county, make immediate restitution to the party injured, and give further security to obey the injunction or restraining order. In default thereof, said party may be committed to close custody until he complies with such requirement, or is otherwise discharged.

{¶ 65} While a permanent injunction was issued in this case, the motion filed by Grande Voiture asked the trial court to find Simpson in contempt of both the court's injunction and subsequent March 4, 2020 order. Relevant here, any person who is guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer" may be punished as for a contempt. R.C. 2705.02(A)(1). If the accused is found guilty of the contempt charge, R.C. 2705.05 provides that the court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 66} The penalties prescribed in R.C. 2727.12 are cumulative to the penalties that may be imposed under R.C. 2705.05. *Citicasters Co. v. Stop 26-Riverbend, Inc.*,

2002-Ohio-2286, ¶ 59 (7th Dist.), citing *Pilliod v. Searles*, 115 Ohio St. 694 (1927). We have previously said that R.C. 2705.05 does not limit courts from imposing other sanctions based on their inherent power to punish contempt. *In re S.M.J.*, 2024-Ohio-1495, ¶ 39 (2d Dist.), citing *Johnson v. Johnson*, 2020-Ohio-1644, ¶ 20 (2d Dist.). "Although it is conceded that the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Cincinnati Dist. Council 51*, 35 Ohio St.2d at 207. Though the Revised Code provides statutory authority, "[t]he power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." *Denovchek*, 36 Ohio St.3d at 15. "Implicit in the exercise of that power is the authority to fashion a punishment that will induce the contemnor to remedy the contempt involved." *Steger Motors, Inc.*, 111 Ohio App.3d at 269. "Consequently, while the trial court needed to follow the procedures in R.C. 2705.05(A), it was not restricted to the punishments in the statute." *In re S.M.J.* at ¶ 39. Simpson's argument that R.C. 2727.11 and R.C. 2727.12 provided no authority for the trial court's issuance of sanctions is of no consequence, because the trial court had inherent authority independent of those statutes. *Boston Hts. v. Cerny*, 2007-Ohio-2886, ¶ 22 (9th Dist.).

{¶ 67} "[C]ivil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555 (2001), citing *State v. Kilbane*, 61 Ohio St.2d 201, 204-205 (1980). "Civil contempt sanctions involve a conditional penalty . . . 'designed for remedial or

coercive purposes and are often employed to compel obedience to a court order." (Citation omitted.) *Docks Venture, L.L.C.* 2014-Ohio-4254, at ¶ 15, quoting *Corn* at 555. "A contempt fine is considered civil and remedial if it coerces a party into compliance with the court's order or compensates the complainant for losses sustained." (Citation omitted.) *Miami Twp. Bd. of Trustees v. Powlette*, 2023-Ohio-2890, ¶ 18 (2d Dist.). "In the exercise of its discretion in a civil contempt proceeding, a court has the ability to exercise its equitable powers in fashioning a coercive remedy designed to achieve compliance with its orders." *Lindsey v. Lindsey*, 2021-Ohio-2060, ¶ 37 (11th Dist.), citing *Winebrenner v. Winebrenner*, 1996 WL 761996, *3 (11th Dist. Dec. 6, 1996).

{¶ 68} The trial court here found that the purge orders and potential sanctions were reasonable in light of the fact that it was Simpson's second contempt finding for committing similar violations. The purpose of the fine was neither to compensate Grande Voiture for its losses nor to punish Simpson for his conduct. Rather, it was coercive in nature, one imposed to produce compliance by Simpson with the court's orders. Notably, "[i]t is well settled that separate fines may be assessed for each day in which a court's order is violated." (Citations omitted.) *Cincinnati Dist. Council 51*, 35 Ohio St.2d at 207, fn. 1. Accordingly, the $100 per week fine for each week Simpson remained in noncompliance was reasonably designed to compel Simpson to comply with the court's orders, and the trial court was permitted to impose it upon Simpson to procure his compliance.

{¶ 69} Furthermore, it is well settled that trial courts have discretion to require the contemnor to pay the moving party's attorney's fees. *Lelak*, 2021-Ohio-519, at ¶ 42. "A

trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." *State ex rel. Fraternal Ord. of Police Captain John C. Post Lodge No. 44 v. Dayton*, 49 Ohio St.2d 219 (1977), syllabus. Thus, the trial court was authorized to order Simpson to pay reasonable attorney's fees.

{¶ 70} Simpson's second and third assignments of error are overruled.

### IV. Simpson's Request for Sanctions

{¶ 71} In his final assignment of error, Simpson claims that because he filed motions for sanctions against Grande Voiture, the trial court was required to hold a hearing pursuant to R.C. 2323.51. We do not agree.

{¶ 72} On October 22, 2022, Simpson filed a motion requesting that the court find Grande Voiture's May 26, 2022 motion for contempt sanctions and the prosecution of such motion frivolous. Simpson supplemented his motion to include Grande Voiture's conduct prior to the filing of the contempt motion in his allegations of frivolity. Simpson requested $250,353 as sanctions for the frivolous conduct, which included $245,250 for attorney's fees and $5,103 for expenses.

{¶ 73} In its December 7, 2022 decision, the trial court denied Simpson any sanctions. The trial court found that Grande Voiture's contempt motion was not frivolous because Simpson had been found to be in contempt. The trial court also struck Simpson's supplemental motion for sanctions because it did not comply with the local rules and lacked merit.

{¶ 74} In *Grande Voiture III*, Simpson raised a similar argument that the trial court had erred in failing to grant his motion for sanctions because Grande Voiture had filed a

motion for Civ.R. 70 relief that Simpson claimed was frivolous. *Grande Voiture III*, 2021-Ohio-2429, at ¶ 24. Having found that Grande Voiture's motion for Civ.R. 70 relief was warranted and permitted by law and the facts of the case, we concluded that Grande Voiture necessarily did not engage in frivolous conduct in filing the motion and that it was not subject to sanctions for such filing. *Id.* at ¶ 26. The same analysis applies here.

{¶ 75} Based on our disposition of the prior assignments of error, Grande Voiture's motion asking the trial court to hold Simpson in contempt of court was warranted and permitted by law and the facts of the case. We must therefore conclude, as the trial court did, that Grande Voiture did not engage in frivolous conduct in filing that motion and was not subject to sanctions for such filing. Accordingly, the trial court did not err in overruling Simpson's motion for sanctions.

{¶ 76} It was also not an abuse of discretion for the trial court to overrule Simpson's motion without a hearing. "R.C. 2323.51 does not mandate that an evidentiary hearing always be conducted to determine whether a particular action involves frivolous conduct, but it does require that if attorney fees are to be ultimately awarded, then a hearing indeed must be held in accordance with subsections (a), (b), and (c) of R.C. 2323.51(B)(2)." *Shields v. City of Englewood*, 2007-Ohio-3165, ¶ 50 (2d Dist.). "[W]here a trial court determines there is no basis for the imposition of sanctions, the trial court has discretion to deny the motion for sanctions without a hearing." (Citations omitted.) *Middle W. Spirits, LLC v. Gemini Vodka, Ltd.*, 2021-Ohio-1503, ¶ 16 (10th Dist.). In this case, there was a hearing held on Grande Voiture's contempt motion, which was the basis for Simpson's motion for sanctions. Because there was no arguable merit to Simpson's

allegation that the May 26, 2022 contempt motion was frivolous, the trial court did not abuse its discretion in denying Simpson's motion without a hearing.

{¶ 77} As for Simpson's supplemental motion for sanctions, which alleged that Grande Voiture's conduct prior to filing the contempt motion had been frivolous, the trial court ordered Simpson's supplemental motion for sanctions to be stricken because Simpson failed to comply with the Montgomery County Local Rules. The local rule provided that after a moving party files a motion, the opposing party may file a memorandum in opposition, and the moving party may file a reply memorandum. Mont. Co. C.P.R. 2.05(B). However, it further provided that "[n]o other memoranda shall be filed without leave of the Court." Mont. Co. C.P.R. 2.05(B)(3).

{¶ 78} In this case, Simpson filed a motion for sanctions on October 22, 2022. Grande Voiture filed a memorandum in opposition to which Simpson filed a reply on October 31, 2022. Simpson then filed a supplemental motion for sanctions on November 14, 2022, which was intended to "add to and renew" his prior motion for sanctions. Simpson filed the supplemental motion without first obtaining leave of court. It was within the sound discretion of the trial court to strike his supplemental motion for failing to comply with the local rules. In so striking, the trial court also found that the arguments provided in Simpson's supplemental motion had previously been raised and rejected by the trial court on "numerous" prior occasions and lacked merit. A trial court has discretion to manage its docket and "to strike filings that [are] 'repetitious, unsubstantiated, frivolous, and/or made in bad faith.' " *White v. Dollar Tree Inc.*, 2024-Ohio-4511, ¶ 29 (2d Dist.), quoting *State v. Dudas*, 2022-Ohio-1637, ¶ 54 (11th Dist.). Under these circumstances,

we cannot conclude that the trial court abused its discretion in striking Simpson's supplemental motion for sanctions.

**{¶ 79}** Simpson's fourth assignment of error is overruled.

### V. Conclusion

**{¶ 80}** Having overruled all of Simpson's assignments of error, we will affirm the judgments of the trial court.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.